# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| In re:<br><br>**KENTUCKIANA MEDICAL CENTER, LLC,**<br><br>Debtor-in-Possession. | Case No. 10-93039-BHL-11<br><br>(Chapter 11)<br><br>Honorable Basil H. Lorch III<br><br>(Filed via ECF) |

## MED ONE'S MOTION TO CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b)

Med One Capital Funding, LLC ("**Med One**"), a secured creditor of Kentuckiana Medical Center LLC, the debtor-in-possession (the "**Debtor**") in the above-entitled Chapter 11 case (the "**Case**"), by and through its counsels of record, hereby files this Motion to Convert Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(b), and in support thereof provides as follows:

### BACKGROUND

1. The Debtor commenced this Case on September 19, 2010 (the "**Petition Date**"), over seven months ago, by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

2. The Debtor is currently managing its assets and operating its business as a debtor-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

3. On February 17, 2011, and over the objection of Med One and other creditors and parties in interest, this Court extended the exclusive period pursuant to which only the Debtor could file a plan and solicit acceptances thereof (the "**First Extension Order**"). [Doc. 343]

4.　　　　The First Extension Order was granted pursuant to the Debtor's *Motion to Extend Exclusivity Periods for Filing and Soliciting Acceptances of a Plan of Reorganization* (the "**First Exclusivity Motion**") [Doc. 275], wherein the Debtor requested that the Court extend "until April 18, 2011" the Debtor's exclusive period to file a plan, and "until June 17, 2011" the Debtor's exclusive period for soliciting acceptances of its plan. [Id.]

5.　　　　The sole basis referenced by the Debtor for granting the First Exclusivity Motion was its representation that "KMC is continuing to generate revenues and to manage its property." [Id.]

6.　　　　In numerous hearings before this Court, the Debtor has represented that the Debtor's only hope for a successful reorganization is to either (a) sell all or substantially all of its assets for a sufficient price, or (b) obtain substantial cash infusion from investor sources to fund a plan. The Debtor confirms these representations in the Second Exclusivity Motion, where it states that it has been diligently working to inject "capital sufficient to fund a reorganization which could generate a meaningful recovery for creditors of this estate." [Second Exclusivity Motion, ¶6]

7.　　　　Pursuant to the First Extension Order, the Debtor's exclusive period to file a plan was extended to April 18, 2011, and its exclusive period to solicit acceptances of a plan was extended until June 17, 2011. [Doc. 343]

8.　　　　The Debtor did not file a proposed plan by the April 18, 2011 deadline set forth in the First Extension Order. Instead, on April 13, 2011, the Debtor filed the Second Exclusivity Motion.

9.　　　　In the Second Exclusivity Motion, which asks the Court to further extend until July 18, 2011 the Debtor's exclusive period to file a plan, the Debtor states that it needs additional time to prepare and file a plan because it cannot raise "capital sufficient to fund a

2

reorganization" unless interested financiers are provided "with a collateral position on the real estate on which the Debtor operates its hospital . . .:" [Second Exclusivity Motion, ¶7]

10. The Debtor also states that its affiliate, KMC REI, owns the real estate, that KMC REI filed a voluntary Chapter 11 case on April 1, 2011 with this Court, and that "any capital infusion which this Debtor desperately needs in order to fund a reorganization will involve KMC REI's bankruptcy estate and must gain the Court's approval with respect to the interested parties therein."  [Id., ¶12]

11. There has been no motion filed in either this Case or the KMC REI case asking the Court to either jointly administer or substantively consolidated those cases.

12. There has been no motion filed in either this Case or the KMC REI case asking the Court to approve any sale of assets of either debtor.

13. There has been no motion filed in either this Case or the KMC REI case asking the Court to approve any financing that could fund a plan of reorganization in either case.

14. In the KMC REI case, the Court, on KMC REI's request, granted KMC REI an extension of through and including May 2, 2011 in which to file its schedules and statements. As of May 3, 2011, at 1:00 p.m. EDT, KMC REI still had not filed its schedules and statements.

15. The Debtor does not explain in the Second Exclusivity Motion how assets of KMC REI, and in particular KMC REI's real property, could be used for the benefit of the Debtor's creditors.

16. The Debtor does not explain in the Second Exclusivity Motion what the KMC REI bankruptcy estate looks like, including information regarding assets, liabilities and creditors (other than to say that Rialto has a lien on KMC REI's real estate).

17. The Debtor does not explain in the Second Exclusivity Motion how KMC REI's real property and/or any other assets could be included in a plan of reorganization filed in this Case.

18. On January 31, 2011, the Debtor filed its Monthly Operating Report for the period of December 2010 (the "**December MOR**").

19. In the December MOR, the Debtor indicated, at page 2, that it had income in December 2010 in the amount of $1,418,777 and expenses in December 2010 in the amount of $2,240,516, resulting in negative cash flow from operations in December 2010 in the amount of -$821,739.

20. The December MOR also indicated, at page 3, that the Debtor had unpaid post-petition obligations in the amount of $231,416 as of December 31, 2010.

21. The December MOR also indicated, at page 4, that while it projected a net loss in December 2010 in the amount of -$391,154, the Debtor's actual net loss was -$821,739, resulting in a difference of -$430,585 between actual and projected operating performance.

22. On February 28, 2011, the Debtor filed its Monthly Operating Report for the period of January 2011 (the "**January MOR**").

23. In the January MOR, the Debtor indicated, at page 2, that it had income in January 2011 in the amount of $1,477,211 and expenses in January 2011 in the amount of $2,185,587, resulting in negative cash flow from operations in January 2011 in the amount of -$708,376.

24. The January MOR also indicated, at page 3, that the Debtor had unpaid post-petition obligations in the amount of $194,910 as of January 31, 2011.

4

25.     The January MOR also indicated, at page 4, that while it projected a net loss in January 2011 in the amount of -$399,313, the Debtor's actual net loss was -$708,376, resulting in a difference of -$309,063 between actual and projected operating performance.

26.     On April 4, 2011, the Debtor filed its Monthly Operating Report for the period of February 2011 (the "**February MOR**").

27.     In the February MOR, the Debtor indicated, at page 2, that it had income in February 2011 in the amount of $1,521,179 and expenses in February 2011 in the amount of $2,185,587, resulting in negative cash flow from operations in February 2011 in the amount of -$772,221.

28.     The February MOR also indicated, at page 3, that the Debtor had unpaid post-petition obligations in the amount of $223,416 as of February 28, 2011.

29.     The February MOR also indicated, at page 4, that while it projected a net loss in February 2011 in the amount of -$422,154, the Debtor's actual net loss was -$772,221, resulting in a difference of -$350,067 between actual and projected operating performance.

30.     On April 12, 2011, the Debtor filed its Monthly Operating Report for the period of March 2011 (the "**March MOR**").

31.     In the March MOR, the Debtor indicated, at page 2, that it had income in March 2011 in the amount of $1,668,327 and expenses in March 2011 in the amount of $2,432,595, resulting in negative cash flow from operations in January 2011 in the amount of -$764,268.

32.     The March MOR also indicated, at page 3, that the Debtor had unpaid post-petition obligations in the amount of $223,416 as of March 31, 2011.

33.     The March MOR also indicated, at page 4, that while it projected a net loss in March 2011 in the amount of -$307,327, the Debtor's actual net loss was -$764,268, resulting in a difference of -$456,941 between actual and projected operating performance.

34. Pursuant to the December MOR, January MOR, February MOR and March MOR, the Debtor actual cash profit from December 1, 2010 through March 31, 2011 in this Case was negative $3,066,604, and that does not include any debt service on pre-petition debt except for a few small adequate protection payments to a couple of secured creditors.

35. Pursuant to the December MOR, January MOR, February MOR and March MOR, while the Debtor projected having negative cash profit from December 1, 2010 through March 31, 2011 in the amount of $1,519,948, its actual negative cash profit during that time period was $3,066,604, which is a difference of $1,546,656.

36. As noted by the Official Committee of Unsecured Creditors in its *Motion to Compel Filing of Cash Collateral Budget*, dated April 20, 2011 [Doc. 435], the Debtor is in default of its obligation to file with the Court and provide to interested parties, as directed by the Court at the January 20, 2011 cash collateral hearing, a meaningful cash collateral budget. As noted therein by the Committee, because a meaningful cash collateral budget has not been provided by the Debtor, creditors and parties in interest are unable to effectively monitor the Debtor's spending of cash in this Case.

## ARGUMENT

The Court should immediately convert this Case to a case under Chapter 7. Section 1112(b)(1) of the Bankruptcy Code provides that, "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1).

6

Cause clearly exists to convert this Case pursuant to at least two subparagraphs of section 1112(b)(4) of the Bankruptcy Code which sets forth a non-exhaustive list of circumstances constituting cause. Subparagraph 1112(b)(4)(A) provides that cause includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. In addition, subparagraph 1112(b)(4)(E) provides that cause includes the "failure to comply with an order of the court."

It is undisputed that there has been a substantial and continuing loss to or diminution of the estate since the Petition Date. The Debtor's monthly operating reports make that fact crystal clear. The Debtor has had negative profit every month it has been in Chapter 11, and it lost over $3,000,000 just in the four-month period ending March 31, 2011. Moreover, it is equally clear that there is not a reasonable likelihood of rehabilitation here. "The issue of rehabilitation for purposes of Section 1112(b)(4)(A) 'is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify the continuance of the reorganization effort.'" In re LG Motors, Inc., 422 B.R. 110, 116 (Bankr. N.D. Ind. 2009) (quoting In re Rey, 2006 Bankr. LEXIS 1803 (Bankr. N.D. Ill. Aug. 21, 2006)).

In this Case, the Debtor continues to hemorrhage massive amounts of cash each month, and even the Debtor admits that its only hope of rehabilitation will come from a substantial cash infusion. But creditors have been waiting for more than seven months for that cash infusion to arrive, yet nothing has materialized. Moreover, it is pure speculation to suggest that anything is going to change in that area in the near future. In fact, now that KMC REI has filed for bankruptcy, the odds of that happening are even slimmer.

As noted by the Court in LG Motors, Inc., "[t]his is precisely the situation that Section 1112(b)(1) and (4)(A) were designed to protect creditors from. If the estate is not diminishing, creditors will not be prejudiced by being asked to wait to see if the Debtor can propose a plan.

7

Or, if the business is likely to generate substantial profits in the future, creditors will be better off being paid by that future revenue. *But where, as here, the existing assets and receivables are diminishing and there is no likelihood of future profits, creditors' only real hope is to cut their losses by forcing the Debtor to liquidate as soon as possible.*" Id., at 117 (emphasis supplied) (finding cause for conversion of case to Chapter 11). This Court, therefore, should find that cause exists under section 1112(b)(4)(A), and convert the Case.

Finally, not only does cause exist to convert the Case under section 1112(b)(4)(A), but it also exists under section 1112(b)(4)(E). At the January 20, 2011 cash collateral hearing, the Court directed the Debtor to provide the Court and parties in interest with a meaningful cash collateral budget. As the Official Committee of Unsecured Creditors has pointed out, that has yet to happen in spite of the Committee's many repeated requests that the Debtor do so. The Debtor has failed to comply with an important order of the Court, and cause exists to convert this Case for that independent reason as well.

## **CONCLUSION**

Pursuant to 11 U.S.C. § 1112(b), and also for the reasons set forth herein, this Court should immediately convert this Case to a case under Chapter 7. Cause exists to convert this Case to Chapter 7 because (a) since the Petition Date, there has been a substantial and continuing loss to or diminution of the estate, and there is not a reasonable likelihood of rehabilitation, and (b) the Debtor has failed to comply with orders of the Court. Therefore, the Court should convert the Case.

DATED this 3rd day of May, 2011.

8

Andrew D. Stosberg

  /s/ Andrew D. Stosberg
Andrew D. Stosberg
**LLOYD & McDANIEL, PLC**
11405 Park Road, Suite 200
P.O. Box 23200
Louisville, Kentucky 40223-0200
Telephone: (502) 585-1880
Email: astosberg@lloydmc.com

- and -

Michael R. Johnson (Utah Bar No. 7070)
**RAY QUINNEY & NEBECKER P.C.**
36 South State Street, 14th Floor
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Email: mjohnson@rqn.com

*Attorneys for Med One Capital Funding*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of May, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to all parties who have entered an appearance in this case.

/s/ Andrew D. Stosberg
Andrew D. Stosberg
*Attorneys for Med One Capital Funding*