UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENTUCKIANA MEDICAL CENTER, LLC | ) | CHAPTER 11 |
| | ) | |
| Debtor | ) | CASE NO. 10-93039-BHL-11 |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING PAYMENT OF CERTAIN FEES AND EXPENSES; AND (II) GRANTING PROVISIONAL AUTHORITY TO OFFER ASSETS AS SECURITY TO POST-PETITION LENDER**

\*\*\*   \*\*\*   \*\*\*

Comes the Debtor, Kentuckiana Medical Center, LLC (the "Debtor"), by counsel, and hereby requests entry of an Order (i) authorizing the Debtor, within Debtor's sole discretion, to pay or reimburse certain preliminary fees and expenses incurred by potential lender(s) as each party performs necessary due diligence prior to entering into a post-petition loan agreement; and (ii) granting provisional authority to the Debtor to offer its assets, along with those of an affiliated debtor in possession, as collateral security to prospective post-petition lenders. In support of this Motion, Debtor states as follows:

**Jurisdiction**

1.     This Court has jurisdiction to hear this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule B-4001-2 of the Local Rules of the United States District Court for the Southern District of Indiana (the "Local Rules").

**Background**

3.       On September 19, 2010 (the "Petition Date"), Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, Debtor is continuing to generate revenues and manage its assets as a debtor in possession.

4.       The Debtor is an Indiana limited liability company and the operator of an acute care hospital located in Clarksville, Indiana (the "Hospital"). KMC offers a range of care including cardiovascular, oncology, urology, internal medicine and plastics within its 36-bed facility. As such, KMC is a "health care business" as that term is defined in § 101(27A). As of the date of this Motion, KMC employs approximately 200 individuals.

5.       The Court has denied all previous requests for the appointment of a trustee over Debtor's estate, but a committee of unsecured creditors has been appointed pursuant to § 1102.

6.       On October 7, 2010, the Court approved Debtor's retention of Timothy Donahue of VACO Resources, LLC as the Debtor's chief restructuring officer (the "CRO"). Since his employ, the CRO has served as the key decision-maker for the Debtor with respect to its operations during this reorganization and its efforts to achieve long-term sustainability.

**The Need for Post-Petition Financing**

7.       As has been well-documented in various pleadings and sworn testimony before the Court, the Debtor's hospital operations have been hindered by under-capitalization since the Hospital opened to the public. The Debtor's financial problems are most glaring in the unfinished 12-bed wing and emergency room wing of the Hospital facility.

8. Early in this chapter 11 case, the Debtor identified completion of the Hospital as the preferred solution to its ongoing cash flow deficiencies. It is believed that if Debtor has access to on-site emergency room facilities, it will be able to maintain at least a minimum patient census necessary to consistently operate at a profit.

9. The Debtor, with the assistance of the CRO and counsel, has spent the last several months developing detailed cash flow projections under various scenarios and have actively solicited proposals for post-petition financing. However, the Debtor's ability to secure such financing commitments has been hindered by its inability to convey a valuable interest in the real estate upon which the Hospital is located. Moreover, present economic conditions beyond the control of the Debtor and other parties in interest have made it even more difficult for the Debtor to obtain necessary post-petition financing at this time.

10. Recognizing the Debtor's need for post-petition financing and recognizing the fact that no potential lenders appeared willing to make a financing commitment without simultaneously obtaining a first priority mortgage interest in the real estate occupied by the Debtor, the Debtor began considering the ways in which it could offer its own assets, as well as the real estate owned by its affiliate, KMC Real Estate Investors, LLC ("KMC REI"), as collateral for securing a post-petition loan facility.

11. Any post-petition financing, if approved by the Court, will be used to finance the ongoing expenses being generated during this chapter 11 case, to fund the completion of the Hospital facilities, to cure and/or otherwise compensate various equipment financers herein, and to satisfy the Debtor's general corporate obligations.

**Debtor's Relationship to KMC Real Estate Investors, LLC**

12. On April 1, 2011, KMC REI filed with this Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code. KMC REI's bankruptcy case is pending in this Court as Case No. 11-90930-BHL-11.

13. The Debtor operates its Hospital on premises owned by KMC REI, presently developed as an approximately 80,000 square foot facility situated on a 10-acre campus. The Hospital is presently licensed to house 36 beds for patients receiving various acute care treatments, but Debtor believes that the license could be expanded to nearly 60 beds upon completion of certain structural improvements.

14. The Debtor and KMC REI are "affiliates" as that term is defined in § 101(2)(B) of the Bankruptcy Code in that 20% or more of KMC REI's shares are directly or indirectly owned or controlled by entities who also directly or indirectly own or control 20% or more of the shares of the Debtor.

**Current Proposal for Post-Petition Financing**

15. On or around May 4, 2011 the Debtor and KMC REI received from CLS Mortgage, Inc. ("CLS") a Letter of Intent (the "LOI") to serve as the framework under which the parties may complete their due diligence attendant with CLS' consideration of extending post-petition financing to the Debtor and KMC REI. A true and correct copy of the LOI, including all exhibits thereto, is attached as **Exhibit A** to this Motion and incorporated herein by reference.

16. The LOI includes a summary of some, but not all, of the key terms of a post-petition loan facility (the "Prospective DIP Facility") which CLS believes, prior to performing necessary due

4

diligence, it would be willing to offer to the Debtor and KMC REI. The LOI is not a commitment of CLS to provide post-petition financing to the Debtor and/or KMC REI.

17.     The Debtor has engaged in preliminary negotiations with CLS, is familiar with the terms summarized in the LOI, and is informed and believes that the proposed terms and conditions of the Prospective DIP Facility from CLS, if offered by CLS and approved by the Court, would be feasible to both the Debtor and KMC REI.

18.     The LOI contains terms and conditions which are binding on the Debtor and KMC REI, including the payment of a non-refundable due diligence deposit of five thousand dollars ($5,000.00) (the "Deposit") and the commitment to pay and indemnify CLS for all direct or indirect fees and costs arising in connection with the negotiation, execution and consummation (if it occurs) of the DIP Facility.

19.     The Debtor believes that the prospect of obtaining the Prospective DIP Facility upon compliance with the terms and conditions of the LOI represents the only realistic source of financing at this time. Nevertheless, the Debtor will persevere in soliciting and locating potentially better offers for post-petition financing.

20.     In the interim, however, the Debtor does not wish to squander the opportunity that engaging CLS under the LOI presents.

**Relief Requested**

21.     By this Motion, the Debtor seeks authorization to pay CLS the Deposit and to agree to reimburse and/or indemnify CLS for additional expenses pursuant to the LOI.[1]

---

[1] At this early stage, KMC REI and the the Debtor anticipate being a borrower and guarantor, respectively, under the DIP Facility, or any post-petition financing. However, KMC REI lacks cash flow sufficient to pay the Deposit or reimburse CLS for additional expenses.

22. Additionally, the Debtor seeks entry of an Interim Order granting provisional authorization for the Debtor and KMC REI to offer their assets jointly as collateral for one or more post-petition lending facility(ies), on terms which would provide for superpriority administrative expense claims against both bankruptcy estates and a priming lien on the asset of the KMC REI bankruptcy estate, to the extent required by any post-petition lender.

## Basis for Relief

### I. Debtor Should be Permitted to Reimburse CLS for its Due Diligence Activities

23. Payment of the Deposit and the Debtor's agreement to reimburse CLS for additional expenses incurred pursuant to the LOI have been negotiated at arms' length and in good faith, and are legitimately necessary to convince CLS to expend its time and resources in the evaluation of the Debtor's and KMC REI's credit worthiness for the Prospective DIP Facility.

24. The Debtor has informed CLS that it will continue to pursue additional sources for post-petition financing on more favorable terms than CLS has been willing to discuss. Thus, the Debtor's commitment to pay the Deposit and other "due diligence" expenses of CLS is a reasonable and appropriate incentive for CLS to serve as a "stalking horse" with respect to post-petition financing lenders.

### II. Debtor and KMC REI Should be Permitted to Obtain Joint Post-Petition Financing

25. As set forth above, the Debtor has a critical need for an infusion of capital to complete construction of the hospital facility and to fund its obligations accruing post-petition. The Prospective DIP Facility, or any subsequent commitment for post-petition financing the Debtor pursues, will immediately enhance the going concern value of the Debtor by improving its facilities available for emergency care services to patients. Furthermore, the Debtor anticipates that an influx

of cash will encourage its vendors and other business partners to continue providing goods and services post-petition.

26.     Through months of searching and soliciting, the Debtor has determined that a suitable solution to its financing needs is unavailable in existing debt markets without the assets of KMC REI being made available as a "package deal." Accordingly, the Debtor seeks provisional authority to market itself with KMC REI to CLS and other prospective lenders as jointly having the asset composition required to offer a sufficient collateral position that will entice a lender to offer the Prospective DIP Facility or comparable loans.

27.     The Prospective DIP Facility or any comparable loans will provide capital which will augment the tandem bankruptcy estates of the Debtor and KMC REI in manners that will justify the priming liens and/or administrative superpriority treatment typically accorded to post-petition lenders under § 364 of the Bankruptcy Code.[2] KMC REI's sole asset will rise in value through completion of construction improvements to the building, and likewise the Debtor's earning potential will increase as it is able to fully utilize the hospital facilities as intended when the entire concept was first conceived.

28.     Given the Debtor's inability to obtain post-petition financing independent of including KMC REI's real estate, and the dual effect of those benefits anticipated from an infusion of capital to both the Debtor and KMC REI, it appears that jointly offering secured and/or administrative superpriority claim status from each of their bankruptcy estates is necessary and appropriate under the circumstances.

---

[2] The Debtor will file an appropriate motion formally requesting the treatment required of any post-petition lender upon finalizing the terms of its preferred post-petition financing.

29. Without access to the Prospective DIP Facility or comparable loans, the Debtor's estate will suffer immense harm, and likely become administratively insolvent such that a reorganization is impossible.

WHEREFORE, the Debtor respectfully requests entry of an Order (i) authorizing payment of the Deposit and other necessary amounts to CLS, and (ii) granting provisional authority to the Debtor to convey its assets as collateral along with those of KMC REI to prospective post-petition lenders.

Respectfully submitted,

/s/ Neil C. Brody
DAVID M. CANTOR
NEIL C. BORDY
CHARITY B. NEUKOMM
TYLER R. YEAGER
SEILLER WATERMAN LLC
Meidinger Tower – 22nd Floor
462 S. Fourth Street
Louisville, Kentucky 40202
Telephone: (502) 584-7400
Facsimile: (502) 583-2100
E-mail: cantor@derbycitylaw.com
E-mail: bordy@derbycitylaw.com
*Counsel for Debtor*

**CERTIFICATE OF SERVICE**

      It is hereby certified that on May 5, 2011, a true and correct copy of the foregoing Motion for entry of an Order (i) Authorizing Payment of Certain Fees and Expenses, and (ii) Granting Provisional Authority to Offer Assets as Security to Post-Petition Lender was (a) mailed electronically through the U.S. Bankruptcy Court's ECF system at the electronic addresses as set forth in the ECF system to the U.S. Trustee and all other persons receiving electronic notifications in this case, and (b) mailed, first-class, postage prepaid, to those persons, if any, identified in the Court's Notice of Electronic Filing who do not receive electronic notice but are entitled to be served.

                                                        /s/ Neil C. Brody
                                                        NEIL C. BORDY

G:\doc\DMC\Kentuckiana Medical Center, LLC\Pldgs\Mot App Prelim Exps + DIP Fin.wpd