UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

IN RE:                                      )
                                            )
KENTUCKIANA MEDICAL CENTER, LLC  )          CHAPTER 11
                                            )
            Debtor                )         CASE NO. 10-93039-BHL-11
                                            )
_____)

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER
(A) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION CREDIT AND
(B) GRANTING AN ALLOWED SUPER-PRIORITY CLAIM**
**✳✳✳  ✳✳✳  ✳✳✳**

Comes the Debtor, Kentuckiana Medical Center, LLC (the "Debtor"), by counsel, and hereby

requests entry of an Order (the "DIP Order") authorizing the Debtor to obtain post-petition credit

on a super-priority administrative claim basis. In support of this Motion, Debtor states as follows:

**Jurisdiction**

1.      This Court has jurisdiction to hear this Motion under 28 U.S.C. §§ 157 and 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105 and 364 of title

11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule B-4001-2 of the Local Rules of

the United States District Court for the Southern District of Indiana (the "Local Rules").

**Background**

3.      On September 19, 2010 (the "Petition Date"), Debtor filed with this Court a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  Pursuant to §§ 1107(a) and 1108 of the

Bankruptcy Code, Debtor is continuing to generate revenues and manage its assets as a debtor in

possession.

4.      The Debtor is an Indiana limited liability company and the operator of an acute care hospital located in Clarksville, Indiana (the "Hospital"). KMC offers a range of care including cardiovascular, oncology, urology, internal medicine and plastics within its 36-bed facility. As such, KMC is a "health care business" as that term is defined in § 101(27A).  As of the date of this Motion, KMC employs approximately 200 individuals.

5.      The Court has denied all previous requests for the appointment of a trustee over Debtor's estate, but a committee of unsecured creditors has been appointed pursuant to § 1102.

6.      On October 7, 2010, the Court approved Debtor's retention of Timothy Donahue of VACO Resources, LLC as the Debtor's chief restructuring officer (the "CRO"). Since his employ, the CRO has served as the key decision-maker for the Debtor with respect to its operations during this reorganization and its efforts to achieve long-term sustainability.

### The Need for Post-Petition Financing

7.      As has been well-documented in various pleadings and sworn testimony before the Court, the Debtor's hospital operations have been hindered by under-capitalization since the Hospital opened to the public. The Debtor's financial problems are most glaring in the unfinished 12-bed wing and emergency room wing of the Hospital facility.

8.      Early in this chapter 11 case, the Debtor identified completion of the Hospital as the only viable solution to its ongoing cash flow deficiencies. It is believed that if Debtor has access to on-site emergency room facilities, as well as other immediate improvements, it will be able to maintain at least a minimum patient census necessary to consistently operate at a profit. Furthermore, even though an eight-bed wing is complete and fully furnished, the Debtor has been unable to staff the area with necessary personnel during these proceedings.

9.      The Debtor, with the assistance of the CRO and counsel, has spent the last several months developing detailed cash flow projections under various scenarios and have actively solicited proposals for post-petition financing. However, the Debtor's ability to secure such financing commitments has been hindered by its inability to convey a valuable interest in the real estate upon which the Hospital is located. Moreover, present economic conditions beyond the control of the Debtor and other parties in interest have made it even more difficult for the Debtor to obtain necessary post-petition financing at this time.

10.     Recognizing the Debtor's need for post-petition financing and recognizing the fact that no potential lenders appeared willing to make a financing commitment without simultaneously obtaining a first priority mortgage interest in the real estate occupied by the Debtor, the Debtor began considering the ways in which it could offer its own assets, as well as the real estate owned by its affiliate, KMC Real Estate Investors, LLC ("KMC REI"), as collateral for securing a post-petition loan facility.

11.     Any post-petition financing, if approved by the Court, will be used to finance the ongoing expenses being incurred during this chapter 11 case, fund the completion of the Hospital's emergency room and associated operating room, acquire necessary equipment, hire necessary personnel and satisfy the Debtor's general corporate obligations. Attached hereto as **Exhibit A** is a detailed budget of the Debtor's proposed used of funds upon approval of the relief requested herein.

### Debtor's Relationship to KMC Real Estate Investors, LLC

12.     On April 1, 2011, KMC REI filed with this Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code. KMC REI's bankruptcy case is pending in this Court as Case No. 11-90930-BHL-11.

13.     The Debtor operates its Hospital on premises owned by KMC REI, presently developed as an approximately 80,000 square foot facility situated on a 10-acre campus. The Hospital is presently licensed to house 36 beds for patients receiving various acute care treatments, but Debtor believes that the license could be expanded to nearly 60 beds upon completion of certain structural improvements.

14.     The Debtor and KMC REI are "affiliates" as that term is defined in § 101(2)(B) of the Bankruptcy Code in that 20% or more of KMC REI's shares are directly or indirectly owned or controlled by entities who also directly or indirectly own or control 20% or more of the shares of the Debtor.

### Current Proposal for Post-Petition Financing

15.     On or around July 20, 2011 the Debtor and KMC REI received from Gus Goldsmith ("Lender") a written commitment to lend $2,000,000.00 to KMC REI (the "Commitment Letter"). A true and correct copy of the Commitment Letter is attached as **Exhibit B** to this Motion and incorporated herein by reference.

16.     The Commitment Letter includes a summary of the key terms of a post-petition loan facility (the "DIP Facility") which Lender is willing to offer to the Debtor and KMC REI.

17.     The Debtor has engaged in negotiations with Lender, is familiar with the terms stated in the Commitment Letter, and is informed and believes that the proposed terms and conditions contained therein, if approved by the Court, would be feasible to both the Debtor and KMC REI.

**Relief Requested**

18.     The Debtor seeks authorization to obtain post-petition credit on a super-priority

administrative claim basis to provide capital necessary for the purposes set forth above.

19.     By this Motion, the Debtor requests that the Court grant the following relief as

provided for in the DIP Order:

> a.     authorizing Debtor to enter into the DIP Facility in an amount of up to $2 million with the Lender (the "DIP Obligations");
>
> b.     authorizing the Debtor to execute and deliver any documents necessary to implement the terms of the Commitment Letter and to perform such other and further acts as may be necessary or appropriate in connection therewith;
>
> c.     authorizing Debtor to grant a super-priority allowed administrative claim in favor of Lender pursuant to § 364(c)(1) of the Bankruptcy Code with respect to the DIP Obligations;
>
> d.     the scheduling of the final hearing on the Motion to consider entry of the DIP Order authorizing the relief requested in the Motion; and
>
> e.     granting such other and further relief as the Court deems just and proper under the circumstances.

**Summary of Principal Terms**

20.     In accordance with Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy Rule B-

4001-2(d), the significant terms of the proposed DIP Facility (with respect to the Debtor herein) as

currently contained in the Commitment Letter are summarized as follows:

| | |
|---|---|
| **Borrower:** | KMC Real Estate Investors, LLC |
| **Guarantors:** | Kentuckiana Medical Center, LLC and record Title Holders, if different |
| **Amount of Loan:** | $2,000,000.00 |
| **Fees:** | 0.00% |
| **Non-Default Interest Rate:** | 12% per annum |

| | |
|---|---|
| **Maturity Date:** | Thirty-six (36) months after date of the promissory note. |
| **Payment Terms:** | Regular monthly payments of $20,572.24 |
| **Pre-Payment Penalty:** | $123,433.44 less principal and interest actually paid if entire balance paid within six (6) months of closing. |
| **Priority:** | Amounts outstanding under the DIP Facility, including all accrued interest, fees and costs, shall constitute a super-priority administrative expense claim pursuant to § 364(c)(1) of the Bankruptcy Code. |
| **Events of Default:** | None specified in Commitment Letter. Debtor expects that the agreement(s) underlying the DIP Facility will provide customary and appropriate provisions relating to events of default and related matters. |
| **Borrowing Conditions:** | None specified in Commitment Letter. Debtor expects that the agreement(s) underlying the DIP Facility will provide customary and appropriate provisions relating to borrowing conditions and related matters. |

21.     The Commitment Letter does not contain any provisions relevant to the Debtor herein which are required to be disclosed pursuant to Local Bankruptcy Rule B-4001-2(b), and the Debtor does not anticipate that the agreement(s) underlying the DIP Facility will contain such provisions.

### Basis for Relief

22.     As set forth above, the Debtor has a critical need for an infusion of capital to complete construction of various aspects of the hospital facility and to fund its obligations accruing post-petition. The DIP Facility will immediately enhance the going concern value of the Debtor by improving its facilities available for emergency care services to patients. Furthermore, the Debtor anticipates that an influx of cash will encourage its vendors and other business partners to continue providing goods and services post-petition.

23.     Through months of searching and soliciting, the Debtor has determined that a suitable solution to its financing needs is unavailable in existing debt markets without the assets of KMC REI being made available as a "package deal." Accordingly, the Debtor seeks authority to offer itself

with KMC REI to Lender as jointly having the asset composition required to offer a sufficient collateral position that will entice Lender to offer the DIP Facility.

24.     The DIP Facility will provide capital which will augment the tandem bankruptcy estates of the Debtor and KMC REI in manners that will justify the priming liens and/or administrative super-priority treatment typically accorded to post-petition lenders under § 364 of the Bankruptcy Code. KMC REI's assets will rise in value through completion of construction improvements to the building, and likewise the Debtor's earning potential will increase as it is able to fully utilize the Hospital facilities as intended when the entire concept was first conceived.

25.     Given the Debtor's inability to obtain post-petition financing independent of including KMC REI's real estate, and the dual effect of those benefits anticipated from an infusion of capital to both the Debtor and KMC REI, it appears that jointly offering secured and/or administrative super-priority claim status from each of their bankruptcy estates is necessary and appropriate under the circumstances.

26.     As and for adequate protection of the interest of RL BB Financial, LLC ("Rialto"), for partial impairment of its first priority mortgage lien, Rialto will receive regular monthly interest payments while a balance on the DIP Facility remains outstanding.

27.     Without access to the DIP Facility, the Debtor's estate will suffer immense harm, and likely become administratively insolvent such that a reorganization is impossible.

28.     As a Debtor seeking financing under § 364(c) of the Bankruptcy Code, the Debtor has made reasonable efforts to seek other sources of post-petition credit. Debtor has been unsuccessful in seeking to obtain credit as an administrative expense, but has acted in accordance with its business judgment and should not be required to seek credit from every possible source. See

*Bray v. Shenandoah Fed. Sav. & Loan Assoc. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) ("The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable.").

29.     The Debtor has not located any party willing to provide unsecured financing. The Lender is the only known party to date willing to extend credit on terms feasible in light of the Debtor's existing financial commitments.

30.     Accordingly, the Debtor submits that its efforts to obtain post-petition financing satisfies and will continue to satisfy the standard required under § 364 of the Bankruptcy Code, and that authority to enter into the DIP Facility should be granted.

31.     The Debtor believes that the terms of the DIP Facility identified in the Commitment Letter are fair and reasonable, and the potential benefits thereof are substantial.

WHEREFORE, the Debtor respectfully requests entry of an Order authorizing the Debtor to obtain post-petition unsecured credit from Lender in the form of a guaranty of KMC REI's $2,000,000.00 DIP Facility, and grant an allowed super-priority administrative claim to Lender in consideration therefor.

Respectfully submitted,


/s/ Neil C. Bordy
DAVID M. CANTOR
NEIL C. BORDY
CHARITY B. NEUKOMM
TYLER R. YEAGER
SEILLER WATERMAN LLC
Meidinger Tower – 22nd Floor
462 S. Fourth Street
Louisville, Kentucky 40202
Telephone: (502) 584-7400
Facsimile: (502) 583-2100
E-mail: cantor@derbycitylaw.com
E-mail: bordy@derbycitylaw.com
*Counsel for Debtor*

## CERTIFICATE OF SERVICE

It is hereby certified that on July 21, 2011, a true and correct copy of the foregoing Motion for Entry of an Order (a) Authorizing Debtor to Obtain Post-Petition Credit and (b) Granting an Allowed Super-Priority Claim was (a) mailed electronically through the U.S. Bankruptcy Court's ECF system at the electronic addresses as set forth in the ECF system to the U.S. Trustee and all other persons receiving electronic notifications in this case, and (b) mailed, first-class, postage prepaid, to those persons, if any, identified in the Court's Notice of Electronic Filing who do not receive electronic notice but are entitled to be served.


/s/ Neil C. Bordy
DAVID M. CANTOR
NEIL C. BORDY


G:\doc\DMC\Kentuckiana Medical Center, LLC\Pldgs\Mot Auth DIP Fin.wpd