UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

IN RE:

KENTUCKIANA MEDICAL CENTER, LLC          CASE NO. 10-93039-BHL

DEBTORS                                   CHAPTER 11

### MED ONE CAPITAL FUNDING, LLC'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION CREDIT AND (B) GRANTING AN ALLOWED SUPER-PRIORITY CLAIM

Comes now Med One Capital Funding, LLC ("Med One"), by counsel, and hereby files its Objection to Debtor's Motion for Entry of an Order (A) Authorizing Debtor to Obtain Post-Petition Credit and (B) Granting an Allowed Super-Priority Claim (the "Emergency Financing Motion"), and in support thereof provides as follows:

1. On July 21, 2011, the Debtor filed the Emergency Financing Motion in this case. In the Emergency Financing Motion, the Debtor asks the Court for its approval of a DIP Facility[1], under which the Debtor's landlord affiliate, KMC REI,[2] is seeking to borrow two million dollars from a Lender on a secured basis with the Lender holding a first-priority priming lien to secure the DIP Facility. The two million dollars would be used to "infus[e] . . . capital to complete construction of various aspects of the hospital facility and to fund its obligations accruing post-petition." (Emergency Financing Motion, ¶ 22.)

2. Although Med One would like to see the Debtor's hospital successfully reorganize, it cannot support the Emergency Financing Motion for at least three primary reasons.

---

[1] Capitalized terms not otherwise defined herein shall take the meaning ascribed to them in the Emergency Financing Motion.

[2] KMC REI has filed a chapter 11 case with this Court and is also seeking approval of an emergency financing motion under the same terms in its bankruptcy.

3. The Emergency Financing Motion purports to include "detailed budget" for the Debtor's use of the funds sought in the Emergency Financing Motion. (*See* Emergency Financing Motion ¶ 11.) The "budget" that is included in the Emergency Financing Motion, however, lacks meaningful detail sufficient for allowing the Court or any interested party to ascertain the exact nature and extent of the expenditures resulting from the DIP Facility, and how and whether they will improve the hospital. The Debtor fails to describe the specific nature of the "Salaries and Benefits", "Supplies", "Leased Equipment" and "Various"; moreover, it does not identify the context or benefit to the estate that each of these expenditures are forecasted to provide. In addition, the amounts listed for "capital projects" – which is in and of itself an improperly vague description – are merely loose estimates. Without a detailed budget, the financing sought in the Emergency Financing Motion should not be approved.

4. In addition to its failure to include an appropriate budget, the Debtor provides no evidence that demonstrates how the use of the two million dollars will benefit the estate or achieve a feasible reorganization opportunity. General optimistic propositions are espoused by the Debtor, including the immediate enhancement of the going concern, improvement of the facilities available for serving patients and increased earning potential. (*See* Emergency Financing Motion ¶ 22.) These encouraging assertions, however, are wholly unsubstantiated because the Debtor has not provided any detailed forecasts or projects to support its positions. Without this information, it is simply impossible for the Court or any interested party to establish an informed opinion regarding the true extent of any benefit that the financing may (or may not) provide to the Debtor's estate and its reorganization.

5. Med One also objects to the Emergency Financing Motion to the extent it seeks to provide the Lender with a super-priority administrative expense claim from this bankruptcy

2

estate. Under the DIP Facility, KMC REI is the borrower, and the Debtor is a guarantor of KMC REI's obligation. Including the Debtor as a guarantor of KMC REI's debt is inappropriate and inequitable. Under the terms of the commitment for the DIP Facility, the Lender obtains the extraordinary protection of a first-priority priming lien, which is secured by real estate allegedly valued at $37,300,000. Granting the DIP Lender any additional guaranties from this bankruptcy estate, which is currently administratively insolvent, would be inequitable and inappropriate.[3]

## CONCLUSION

In summary, although Med One desires to see the Debtor successfully reorganize, it objects to the approval of the Emergency Financing Motion and cannot support its hastily-proposed borrowing mechanism until the Debtor provides sufficiently detailed and credible information that supports the benefits of the DIP Facility.

Respectfully submitted:

/s/ *Andrew D. Stosberg*
Andrew D. Stosberg
LLOYD & McDANIEL, PLC
11405 Park Road, Suite 200
P.O. Box 23200
Louisville, KY 40223-0200
(502) 585-1880
astosberg@lloydmc.com
*Counsel for Med One Capital Funding, LLC*

---

[3] If the Lender seeks an assignment of rents paid from the Debtor to KMC REI in the amount of KMC REI's monthly payment to the Lender under the DIP Facility, Med One would not object.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing objection was e-mailed via the Court's CM/ECF system on this 25th day of July, 2011 to all parties receiving notice in this case through the CM/ECF system, including counsel for the Debtors.

/s/ *Andrew D. Stosberg*
*Counsel for Med One Capital Funding, LLC.*