**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENTUCKIANA MEDICAL CENTER, LLC | ) | CHAPTER 11 |
| | ) | |
| Debtor | ) | CASE NO. 10-93039-BHL-11 |
| | ) | |

**DEBTOR'S PLAN OF REORGANIZATION**
**DATED NOVEMBER 16, 2011**
✻ ✻ ✻    ✻ ✻ ✻    ✻ ✻ ✻

**ARTICLE I**
**SUMMARY**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code proposes to pay creditors of Kentuckiana Medical Center, LLC ("KMC," or alternatively referred to herein as "Debtor" and "Plan Proponent") in cash generated by exit financing and the cash flow from the company's future operations.

This Plan provides for distributions of money to one (1) class of priority claims, seven (7) classes of secured claims, and one (1) class of unsecured claims. On the later of (i) sixty (60) days after the Effective Date or (ii) the date on which all disputed claims have been resolved by Final Order(s), creditors holding Allowed Unsecured Claims will receive *pro rata* cash distributions from an allocation of funds that the Plan Proponent anticipates will have a value of approximately $500,000.00. This Plan also provides for the payment of administrative and priority claims in full on the Effective Date of this Plan unless such claimant has, prior to the Effective Date, agreed in writing to accept periodic payment on account of its administrative and priority claims. Holders of claims which are not Allowed Claims and holders of interests in KMC will not receive or retain any property under the Plan, but shall remain bound by the terms of the Plan and the Confirmation Order.

All creditors and equity security holders should refer to Articles IV through V of this Plan for information regarding the precise treatment of their claim or interest.

**ARTICLE II**
**GENERAL PROVISIONS**

2.01    Definitions and Rules of Construction.    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

a. "**Allowed Claim**" means (i) any claim against the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or (ii) if no proof of claim was filed, a claim which has been designated as "allowed" by a Final Order of the Bankruptcy Court. For purposes of clarity and not as a limitation, a Claim to which an objection to the allowance thereof has been raised by any party in interest prior to Confirmation is <u>not</u> an Allowed Claim until a determination is made through a Final Order or judgment from the Bankruptcy Court.

b. "**Bankruptcy Code**" means the Bankruptcy Code of 1978, as codified in Title 11 of the United States Bankruptcy Code by Public Law 95-598, including all amendments thereof and thereto.

c. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Indiana.

d. "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as in effect at the relevant time.

e. "**Claim**" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to any equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

f. "**Confirmation**" means the entry of an order of confirmation of the Plan by the Bankruptcy Court.

g. "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

h. "**Debtor**" means, Kentuckiana Medical Center, LLC.

i. "**Effective Date**" means the first (1st) business day that funds are made available to the Debtor upon the closing of the Exit Loan. But if a stay of the Confirmation Order is in effect on that date, this term shall mean the first (1st) business day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

    j.    "**Final Order**" means an order of the Bankruptcy Court which has become final, and which may no longer be the subject of an appeal, or any certiorari or mandamus proceeding or any other order, the effectiveness of which has not been, and cannot be, stayed.

    k.    "**KMCREI**" means KMC Real Estate Investors, LLC, an affiliate of the Debtor and the debtor in possession in Case No. 11-90930, a chapter 11 bankruptcy case pending before the Bankruptcy Court.

    l.    "**Plan**" means this Plan of Reorganization, including any amendments or modifications thereto as may hereafter be filed prior to Confirmation.

    m.    "**Secured Claim**" means a Claim, including principal, interest, attorneys' fees and other amounts owing by the Debtor, secured by a lien on property of the respective Debtor, which lien is valid, perfected and enforceable under applicable non-bankruptcy law and not subject to avoidance under the Bankruptcy Code or such applicable non-bankruptcy law as allowed in this case, but only to the extent that such claim is not greater than the value of the Debtor's assets which the Court finds are validly encumbered as security for such claim.

2.02   Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

2.03   Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

2.04   Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

2.05   Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Indiana govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise specifically provided in this Plan or the agreements, documents and instruments executed in connection herewith.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.01   Class 1.   Class 1 consists of all Allowed Claims entitled to priority under § 507 of the Bankruptcy Code (except Allowed administrative expense Claims under § 507(a)(2) and Allowed priority tax Claims

under § 507(a)(8)). As of the date this Plan is proposed, the members of this class include individuals with claims for wages and salaries earned within 180 days before the Petition Date.

3.02 Class 2-A. Class 2-A consists of the secured claim of Hall Robb, LLC ("Hall Robb") arising from the Debtor's indebtedness under the terms of various pre-petition promissory notes and other instruments executed in favor of First Tennessee Bank, N.A. and assigned to Hall Robb, to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code. The collateral securing Hall Robb's Class 2-A Claim consists of first priority liens on and security interests in all of the Debtor's property and assets not subject to a valid purchase money security interest of any other creditor of the Debtor, whether now existing or hereafter acquired, and second priority liens on and security interests in all of the Debtor's property and assets presently subject to a valid purchase money security interest of any other creditor of the Debtor (the "Hall Robb Collateral"). For purposes of the Plan, the Class 2-A Claim is fully secured.

3.03 Class 2-B. Class 2-B consists of the secured claim of Cardinal Health, Inc. and its subsidiaries (collectively, "Cardinal Health") arising from the Debtor's indebtedness under the terms of a promissory note dated November 24, 2009, to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code. The collateral securing Cardinal Health's Class 2-B Claim is a first priority purchase money security interest in all inventory, including but not limited to, prescription and over-the counter pharmaceutical products, nutritional supplements, first-aid, health and beauty products, home health care equipment and products, general merchandise, sundries and any other products supplied by Cardinal Health of any kind whatsoever and wherever located, and whether now owned or hereafter acquired, and all products and proceeds thereof and any additions to, substitutions for, and replacements of any of the foregoing (collectively, the "Cardinal Health Supplied Collateral"), and a second priority security interest in and lien on all other inventory, including but not limited to, prescriptions and over-the-counter pharmaceutical products, home health care products and general merchandise and supplies; all accessions and additions to, substitutions for, and replacements of any of the foregoing; all proceeds or products of any of the foregoing; and all rights to payment under any insurance or warranty, guaranty, or indemnity payable with respect to any of the foregoing (collectively, the "Other Creditor Supplied Cardinal Health Collateral," and together with the Cardinal Health Supplied Collateral, the "Cardinal Health

Collateral"). As of the Petition Date, the Cardinal Health Collateral had a value of $220,000.00.

3.04 <u>Class 2-C</u>. Class 2-C consists of the secured claim of STERIS Corporation ("<u>STERIS</u>") arising from the Debtor's indebtedness under the terms of a credit extension agreement dated December 18, 2008, to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code. The collateral securing STERIS' Class 2-C Claim consists of first priority liens on various operating room and anesthesiology equipment purchased from STERIS (the "<u>STERIS Collateral</u>"). As of the Petition Date, the STERIS Collateral had a value of $240,000.00.

3.05 <u>Class 2-D</u>. Class 2-D consists of the secured claim of The Leasing Group Pool II, LLC ("<u>Leasing Group</u>") arising from the Debtor's indebtedness under two (2) commercial lease agreements dated June 23, 2009 and one (1) commercial lease agreement dated September 3, 2009, to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code. The collateral securing Leasing Group's Class 3-F Claim consists of various operating equipment more specifically described in those certain UCC financing statements of record with the Indiana Secretary of State, as file numbers 200900005228745, 2000900005229221 and 200900007105327 (the "<u>Leasing Group Collateral</u>"). For purposes of the Plan, the Class 2-D Claim is fully secured.

3.06 <u>Class 2-E</u>. Class 2-E consists of the secured claim of Taft Stettinius & Hollister LLP ("<u>Taft</u>") arising from the Debtor's indebtedness to Taft for legal services rendered prior to the Petition Date, to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code. Taft claims a lien that is avoidable pursuant to § 544 of the Bankruptcy Code. Taft has represented that it is holding $57,981.24 cash on account of the Debtor in Taft's IOLTA account.

3.07 <u>Class 2-F</u>. Class 2-F consists of the secured claim of IPFS Corporation d/b/a Imperial Credit Corporation f/k/a Premium Financing Specialist as successor to AICCO, Inc. ("<u>ICC</u>") arising from the Debtor's indebtedness under existing insurance premium finance agreements to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code. The collateral securing ICC's Class 3-H Claim consists of a first priority security interest in all insurance return premiums related to those policies finance by ICC (the "<u>ICC Collateral</u>"). The Class 2-F Claim is fully secured.

5

3.08 Class 2-G. Class 2-G consists of the secured claim of Med One Capital Funding, LLC ("Med One") arising from the Debtor's indebtedness under an equipment lease agreement dated March 22, 2010 to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code. The collateral securing Med One's Class 3-I Claim consists of first priority security interests in and liens on personal property described in and provided pursuant to the equipment lease agreement, including hospital beds, stretchers and other goods (the "Med One Collateral"). For purposes of the Plan, the Class 2-G Claim is fully secured.

3.09 Class 3. Class 3 consists of all Allowed Unsecured Claims, proof of which have been filed on or before the deadline established by the Bankruptcy Court, January 3, 2011, which are not entitled to priority treatment under the Bankruptcy Code or a Final Order of the Bankruptcy Court. The Debtor estimates that the total amount of Allowed Class 3 Claims will be approximately $6,000,000.00.

3.10 Class 4. Class 4 consists of all pre-petition membership interests in the Debtor.

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

4.01 Unclassified Claims. Pursuant to section § 1123(a)(1) of the Bankruptcy Code, this Plan does not designate classes for Allowed administrative expense Claims and Allowed priority tax Claims that are not also Allowed Secured Claims.

4.02 Administrative Expense Claims. Except to the extent that the holder of a particular administrative expense Claim allowed pursuant to § 503 of the Bankruptcy Code has agreed to alternative treatment of its claim, each holder of an Allowed administrative expense Claim will receive cash equal to the Allowed amount of its Claim on the later of (i) the Effective Date or (ii) the date such Claim becomes due according to the parties' normal business terms.

4.03 Priority Tax Claims. Except to the extent that a holder of an Allowed priority tax Claim has agreed, in writing, to alternative treatment, each will receive regular installment payments, in cash, in an amount sufficient to satisfy its priority tax Claim, plus interest accruing at the applicable statutory rate (as determined pursuant to § 511 of the Bankruptcy Code), on or before September 19, 2015.

4.04 United States Trustee Fees. All fees required to be paid pursuant to 28 U.S.C. §1930(a)(6) ("U.S. Trustee Fees") will be determined by the Bankruptcy Court at the hearing on

Confirmation.  Any U.S. Trustee Fees owed on or before the Effective Date will be paid on the Effective Date.

# ARTICLE V
# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
| --- | --- | --- |
| Class 1 - Priority Claims | Unimpaired | Each holder of an Allowed Class 1 priority Claim will be paid in full, in cash, upon the later of the Effective Date or the date on which such Claim is allowed by a Final Order. |
| Class 2-A – Secured Claim of Hall Robb | Impaired | Upon the Effective Date, Hall Robb will receive $3,400,000.00 in cash as full satisfaction of its Secured Claim. Upon receipt of the cash payment, Hall Robb's security interest in the Hall Robb Collateral shall be forever released and discharged. |
| Class 2-B – Secured Claim of Cardinal Health | Impaired | Upon the Effective Date of the Plan, Cardinal Health will receive $220,000.00 in cash in full satisfaction of its Secured Claim. Upon receipt of the cash payment, Cardinal Health's security interest in the Cardinal Health Collateral shall be forever released and discharged. |
| Class 2-C – Secured Claim of STERIS | Impaired | Upon the Effective Date, STERIS will receive a cash payment in the amount of $240,000.00, less amounts paid to STERIS between the date hereof and the Effective Date, as payment in full of its Secured Claim. Upon receipt of the cash payment, STERIS' security interests in the STERIS Collateral shall be forever released and discharged. |

| | | |
|---|---|---|
| Class 2-D – Secured Claim of Leasing Group | Impaired | Leasing Group will retain its first priority lien on the Leasing Group Collateral until all amounts due Leasing Group on account of its Allowed Class 2-D Claim have been paid in full. Between Confirmation and the Effective Date, the Debtor will make adequate protection payments to Leasing Group in the amount of $20,000.00 per month. Leasing Group's Class 2-D Secured Claim shall be amortized over a seven-year term, and bear interest at the rate of 6.00% per annum. All amounts due Leasing Group shall be paid on or before the date that is eighty-four (84) months after the Effective Date (the "Maturity Date"). In the event that the Debtor satisfies the Class 2-D Claim prior to the Maturity Date, the holder(s) of a Class 2-D Claim will not be entitled to any pre-payment penalty or surcharge.<br><br>**Terms of payment if Leasing Group votes to accept the Plan**: Upon the Effective Date, Leasing Group will receive $250,000.00 in cash on account of its Class 2-D Secured Claim. Thereafter, Leasing Group will have its Class 2-D Secured Claim paid in full through eighty-two (82) regular monthly payments of $39,500.00 and a final payment of all amounts outstanding on or before the Maturity Date.<br><br>**Terms of payment if Leasing Group does not vote to accept the Plan:** Upon the Effective Date, the Debtor will commence making eighty-three (83) regular monthly payments of $42,000.00 per month to Leasing Group on account of its Class 2-D Secured Claim, with a final payment of all amounts outstanding on or before the Maturity Date. |
| Class 2-E – Secured Claim of Taft | Impaired | Entry of the Confirmation Order shall be deemed to be an Order that the alleged lien securing the Class 2-E Claim is avoided pursuant to § 544 of the Bankruptcy Code, and that Taft's security interest shall be forever released and discharged. To the extent that Taft remains unpaid after exercising any right of setoff that may exist, Taft's Allowed Unsecured Claim shall be treated as a Class 3 Claim. |
| Class 2-F – Secured Claim of ICC | Unimpaired | Debtor will continue to make monthly payments to ICC per the parties' agreements and the Bankruptcy Court Orders authorizing such payments until ICC's claims are paid in full pursuant to the terms of each said agreement and Order. |

8

| Class 2-G – Secured Claim of Med One | Impaired | Med One will retain its first priority lien on the Med One Collateral until all amounts due Med One on account of its Allowed Class 2-G Claim have been paid in full. Between Confirmation and the Effective Date, the Debtor will make adequate protection payments to Med One in the amount of $10,000.00 per month. Med One's Class 2-G Secured Claim shall be amortized over a seven-year term, and bear interest at the rate of 6.00% per annum. All amounts due Med One shall be paid on or before the date that is eighty-four (84) months after the Effective Date (the "Maturity Date"). In the event that the Debtor satisfies the Class 2-G Claim prior to the Maturity Date, the holder(s) of a Class 2-G Claim will not be entitled to any pre-payment penalty or surcharge.<br><br>**Terms of payment if Med One votes to accept the Plan**: Upon the Effective Date, Med One will receive $125,000.00 in cash on account of its Class 2-G Secured Claim. Thereafter, Med One will have its Class 2-G Secured Claim paid in full through eighty-two (82) regular monthly payments of $21,500.00 and a final payment of all amounts outstanding on or before the Maturity Date.<br><br>**Terms of payment if Leasing Group does not vote to accept the Plan:** Upon the Effective Date, the Debtor will commence making eighty-three (83) regular monthly payments of $23,000.00 per month to Leasing Group on account of its Class 2-G Secured Claim, with a final payment of all amounts outstanding on or before the Maturity Date. |
|---|---|---|
| Class 3 – Allowed Unsecured Claims not entitled to priority | Impaired | On the date that is later of (i) sixty (60) days after the Effective Date or (ii) the date that all Disputed Claims have been resolved by Final Order, the Debtor will distribute a one-time cash payment to each holder of a Class 3 Claim representing that holder's *pro rata* share of the Available Cash.<br><br>Debtor estimates that the Available Cash will be approximately $500,000.00. |
| Class 4 – Membership Interests in KMC | Impaired | On the Effective Date, holders of Class 4 Interests shall have their membership interests canceled. |

# ARTICLE VI
# ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.01     Disputed Claim.  A Disputed Claim is a Claim that has not been allowed or disallowed by a Final Order, and as to which a proof of Claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection prior to Confirmation. Notwithstanding the presumption of allowance of claims and interests for which proof has been filed, the Debtor hereby reserves its right pursuant to § 502 of the Bankruptcy Code and Bankruptcy Rule 3007 to object to, and seek disallowance of, any proof of Claim which the Debtor believes is not an accurate statement of obligations owed to the holder of such Claim. The Debtor will continue to review its books and records to verify that creditors filing proofs of Claim herein assert valid rights to payments against the bankruptcy estate. If the Debtor or another party in interest objects to the allowance of a proof of Claim that has been filed, said Claim will not become an Allowed Claim, and therefore entitled to distributions under this Plan, unless and until a determination is made by a Final Order of the Bankruptcy Court.

6.02     Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a Disputed Claim unless such Claim is allowed by a Final Order or a written agreement by the Debtor which is approved by the Bankruptcy Court under Section 6.03 of this Plan.

6.03     Settlement of Disputed Claims.  The Debtor will retain the power and authority to settle and compromise a disputed Claim with court approval and compliance with Rule 9019 of the Bankruptcy Rules.

# ARTICLE VII
# PROVISIONS FOR EXECUTORY CONTRACTS
# AND UNEXPIRED LEASES

7.01     Assumed Executory Contracts and Unexpired Leases.   The Debtors will assume the following executory contracts and/or unexpired leases effective upon the date of the entry of the Confirmation Order:

| Non-Debtor Counterparty | Nature of Contract or Lease | Cure Payment |
|---|---|---|
| DivLend Equipment Financing, L.L.C. | Lease of hospital equipment | Amounts and terms described in parties' approved Agreed Entry [Document No. 146]. |
| Johnson & Johnson Finance Corporation | Lease of hospital equipment | Amounts and terms described in parties' approved Agreed Entry [Document No. 262]. |
| Healthland, Inc. | Executory contract for maintenance and support of the Debtor's software | Amounts and terms described in parties' approved Agreed Entry [Document No. 209]. |

| Cerner Corporation | Software licensing agreement | $1,390,469.19 on the Effective Date, Allowed pursuant to the Order Allowing Administrative Expense Claim of Cerner Corporation [Document No. 679]. |
|---|---|---|
| Midwest Heme Management, Inc., d/b/a Heme Management | Executory contract for medical perfusion services provided to the Debtor | Amounts and terms described in parties' approved Agreed Entry [Document No. 181]. |

The Debtor hereby reserves the right to amend this Table 7.01 at any time prior to the Effective Date.

7.02    Rejected Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 7.01 above, on the date of entry of the Confirmation Order. A proof of a Claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than twenty-eight (28) days after entry of the Confirmation Order.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION OF THE PLAN

8.01    Post-Confirmation Operations. Upon the Effective Date, the Debtor will retain all property of its estate and continue to use it in the operation of the Hospital. Post-Confirmation operations will be directed and managed by Timothy J. Donahue, who has served as the Debtor's Chief Restructuring Officer since the Bankruptcy Court approved the appointment. As suggested in the Debtor's financial projections submitted with the Disclosure Statement, the Debtor expects its post-Confirmation operations will generate revenues sufficient to satisfy and discharge both its post-petition obligations and those Claims treated in the Plan.

8.02    Exit Financing. In order for the Debtor to fund the payments to creditors provided for in the Plan, Argenta Group LLC d/b/a Argenta Financial ("Argenta" or the "Exit Lender") will obtain a loan in the approximate amount of $36,000,000.00 from Q10 Bonneville Mortgage Company or a similar broker of affiliated life insurance companies, and loan $36,000,000.00 to the Debtor and KMCREI (the "Exit Loan"). Through a series of third-party lending transactions, leases and subleases of property, and other transactions (some of which may require approval of the Bankruptcy Court), the proceeds of the Exit Loan will be made available to the Debtor and KMCREI for the purpose of refinancing the financial obligations of KMCREI and enabling the Debtor to have the operational capacity to improve the Hospital's average daily census, increase revenues and consistently manage its financial obligations.

8.03    Capital Contribution. As a condition to Argenta making available to the Debtor any of the proceeds of the Exit Loan, the Debtor must solicit and obtain capital contributions in the cumulative amount not less than $2,000,000.00 cash on or before the Effective Date (the

"Post-Confirmation Investment"). The Debtor anticipates that the person(s) making the Post-Confirmation Investment will be practicing physicians from the greater-Louisville area, or a corporation owned by such individuals, and is likely to consist of one or more of those individuals who presently hold membership interests in Debtor's 49% membership interest holder, Kentuckiana Investors, LLC ("KI"). As an inducement for one or more person(s) to contribute the Post-Confirmation Investment, the Debtor will offer to distribute on the Effective Date a membership interest of not more than forty-nine percent (49%) to the investor(s). The actual percentage of the membership interest to be distributed on the Effective Date in consideration of the Post-Confirmation Investment is subject to change per the requirements and conditions of Argenta and/or any guarantor(s) of the Exit Loan or the leases and subleases contemplated therein.

8.04   Conditions to Effective Date. The Effective Date will not occur, and the Plan will not be consummated, unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 8.05:

a. The Confirmation Order has been entered; has not been reversed, stayed, modified or amended; and has become a Final Order;

b. The Bankruptcy Court shall have entered an Order (contemplated to be part of the Confirmation Order) approving and authorizing the Debtor and/or KMCREI (within its bankruptcy case, *In re KMC Real Estate Investors, LLC* Case No. 11-90930-BHL-11) to take all actions necessary or appropriate to implement the Plan in form and substance reasonably acceptable to the Debtor and KMCREI, which Order shall include provisions for the implementation and completion of the transactions contemplated by the Plan and the Exit Loan, and the implementation and consummation of the contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan;

c. The Bankruptcy Court shall have entered an Order (contemplated to be part of the Confirmation Order) enjoining all holders of Allowed Secured Claims provided for in the Plan from continuing or commencing any action or proceeding against any guarantor or co-debtor (each a "Guarantor") of the Debtor to assess, collect, enforce, recover, setoff, or obtain property from the Guarantor or his/her/its transferee(s) on account of any Claim against the Debtor for which a Guarantor has a partial or equal obligation therefor, regardless of whether said holder has obtained a judgment against any one or more Guarantor(s) prior to entry of the Confirmation Order;

d. All documents effectuating the transactions contemplated by the Exit Loan shall have been executed and delivered by all parties thereto, and all conditions precedent to the effectiveness of each such document shall have been satisfied or waived in accordance with the terms thereof; and

  e. All other actions, documents, consents and agreements necessary to implement the Plan shall have been effected, obtained and/or executed.

  8.05 <u>Waiver of Conditions to Effective Date</u>.  The conditions to the Effective Date set forth in Section 8.04 may be waived in whole or in part by the Debtor without an Order of the Bankruptcy Court only upon prior written notice to and consent from Argenta and the Exit Lender.

## ARTICLE IX
## DISCHARGE

  On the Confirmation date of this Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Bankruptcy Rules; or (iii) of a kind specified in § 1141(d)(6)(B).

  Upon entry of the Confirmation Order, claimants, including holders of Disputed Claims, shall be forever barred and enjoined from any attempt to assess, demand or collect such discharged indebtedness from the Debtor.

## ARTICLE X
## INJUNCTIONS

*  As of the Effective Date, all entities that have held, currently hold or may hold any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that are compromised, settled or otherwise provided for pursuant to the Plan will be enjoined from taking any of the following actions against the Debtor, its property, or any guarantor or co-obligor of the Debtor, and said guarantor's or co-obligor's property, on account of such claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.*

*  By accepting distributions pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Article X.*

*However, this Plan shall not enjoin or release any party from any cause of action existing as of the Effective Date, based on (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, or (iii) any criminal laws of the United States or any domestic state, city or municipality. Nothing set forth in the Plan or the Confirmation Order shall be construed to preclude the United States from pursuing any cause of action against any of the released parties based upon any civil laws of the United States.*

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of this chapter 11 case pursuant to the provisions of the Bankruptcy Code until the Debtor's case is closed, and shall further retain jurisdiction with respect to the following matters:

a. to classify, allow or disallow Claims, direct distributions under the Plan, and adjudicate all controversies concerning classification or allowance of any Claim against, or interest in, the Debtor;

b. to enforce performance of the Plan against the Debtor, all claimants or any other entity;

c. to hear and determine all Claims arising from the rejection of executory contracts and unexpired leases, and to consummate the rejection and termination thereof, and to hear and determine all matters relating to the assumption of executory contracts and unexpired leases and the assumption and assignment of executory contracts and unexpired leases;

d. to liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claim;

e. to adjudicate all claims to an ownership interest in any property of the Debtor or of the estate or any proceeds thereof;

f. to adjudicate all claims or controversies arising out of any purchase, sale or contract made or undertaken by the Debtor during the pendency of these chapter 11 cases;

g. to recover all assets and properties of the Debtor, wherever located;

h. to hear and determine matters concerning state, local and federal taxes pursuant to §§ 345, 505, 525 and 1146 of the Bankruptcy Code;

      i.      to hear and determine any action or proceeding brought by the Debtor under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code;

      j.      to hear and determine all actions and proceedings brought by the Debtor arising in or related to this chapter 11 case, or otherwise arising under the Bankruptcy Code;

      k.      to determine the validity, extent and priority of all liens against property of the Debtor's estate;

      l.      to consider any modification of the Plan under § 1127 of the Bankruptcy Code and/or modification of the Plan after substantial consummation thereof;

      m.      to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan;

      n.      to hear and determine all requests for compensation and/or reimbursement of expenses that may be made after the date of Confirmation; and

      o.      to hear and determine such matters and make such orders consistent with the Plan as may be necessary or desirable to carry out the provisions thereof.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of this chapter 11 case, including the matters set forth herein, or if the Debtor elects to bring an action in any other forum, this Article shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII
## RESERVATION OF RIGHTS

The filing of the Plan, any statement or provision contained herein, or any action taken by any creditor with respect to the Plan shall not be, or be deemed to be, (i) an admission against interest nor (ii) a waiver of any rights which Debtor may have against any entity, or which any creditor may have against the Debtor, Debtor's property or any other creditor may have against any entity. All such rights are specifically reserved until entry of the Confirmation Order. The Debtor reserves the right to object to Claims. In the event that no Confirmation Order is entered, neither this Plan nor any statement contained herein or action taken in connection therewith, may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the reorganization cases involving the Debtor.

## ARTICLE XIII
## CRAMDOWN

      Debtor, as the proponent of the Plan, hereby requests that the Bankruptcy Court find that the Plan provides fair and equitable treatment of the impaired classes of Claims and Interests, and, if such classes do not accept the Plan, that the Bankruptcy Court confirm the Plan notwithstanding § 1129(a)(8) of the Bankruptcy Code.

## ARTICLE XIV
## RECOMMENDATION AND CONCLUSION

      It is Debtor's position that this Plan is substantially preferable to liquidation under chapter 7 of the Bankruptcy Code. Debtor believes that the Plan fairly and equitably provides for the treatment of all valid claims against the Debtor. **The Debtor recommends and urges all creditors to vote to accept this Plan**.

IN WITNESS WHEREOF, the Debtor has submitted this Plan of Reorganization this 16th day of November, 2011.

>KENTUCKIANA MEDICAL CENTER, LLC
>DEBTOR AND DEBTOR IN POSSESSION
>
>By: /s/ Timothy J. Donahue
>TIMOTHY J. DONAHUE
>Chief Restructuring Officer
>KENTUCKIANA MEDICAL CENTER, LLC

/S/ DAVID M. CANTOR
DAVID M. CANTOR
NEIL C. BORDY
CHARITY B. NEUKOMM
TYLER R. YEAGER
SEILLER WATERMAN LLC
Meidinger Tower, 22nd Floor
462 South 4th Street
Louisville, Kentucky  40202
Telephone: (502) 584-7400
Facsimile: (502) 583-2100
E-mail: cantor@derbycitylaw.com
E-mail: bordy@derbycitylaw.com
*Counsel for Kentuckiana Medical Center, LLC*

G:\doc\DMC\Kentuckiana Medical Center, LLC\Pldgs\Plan of Reorg.doc